IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIE PORTER,                              )
                                            )
              Plaintiff,                    )
                                            )
   -vs-                                     )
                                              Civil Action No.  05-1684
                                            )
BROADSPIRE and the COMCAST LONG TERM        )
DISABILITY PLAN,                            )
                                            )
              Defendants.                   )

AMBROSE, Chief District Judge.

## OPINION and ORDER OF COURT

### SYNOPSIS

Pending are Cross-Motions for Summary Judgment. (Docket Nos. 16 and 17). After careful review of the submissions by the parties and based on my Opinion set forth below, Plaintiff's Motion for Summary Judgment (Docket No. 16) is granted and Defendants' Motion for Summary Judgment  (Docket No. 17) is denied as more fully described below.

### I. FACTUAL BACKGROUND

The parties are familiar with the facts of this case.  Consequently, the following is a brief summary of the facts.  Plaintiff, Willie Porter, began working for Comcast, formerly AT&T, as a customer service representative ("CSR") on June 21, 1981.  Ms. Porter was approved for short term disability from the date of her disability, October 24, 2002,  through the expiration of short term disability on April

1

30, 2003, as a result of multiple sclerosis.  She was awarded social security disability benefits after a finding that she was  disabled as of October 23, 2002.  Ms. Porter applied for long term disability benefits ("LTDB") from Defendant, Comcast Long Term Disability Plan.  Plaintiff was determined to be disabled under the Plan as of October 24, 2002, but became eligible for LTDB beginning May 1, 2003.  She received LTDB through July 30, 2004.

On July 22, 2004, Defendant, Broadspire, the claims administrator for the Comcast Long Term Disability Plan, sent a letter to Ms. Porter indicating that Broadspire was conducting a review of her claim to determine her continued eligibility for benefits.  (R. 348-50).  On October 25, 2004, Broadspire sent a letter to Ms. Porter indicating that it reviewed her claim for disability benefits and that the medical documentation provided by her treating physicians does not support that she has a functional impairment that would render her disabled from any gainful occupation as defined by the Plan.  (R. 402-04).  Broadspire found Ms. Porter capable of at least sedentary work.  (R. 403).  Consequently, Broadspire notified Ms. Porter that she was no longer eligible for LTDB after July 30, 2004, and that her claim would be closed on October 31, 2004.  *Id.*  Ms. Porter sought a review of this decision and on June 23, 2005, the Broadspire Appeal Committee upheld the original decision to terminate Ms. Porter's LTDB effective November 1, 2004.  (R. 469-71).

On December 6, 2005, Ms. Porter filed a Complaint in this Court against Broadspire and the Comcast Long Term Disability Plan pursuant to §502(a)(1)(B) of the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C.

§1132(a)(1)(B). ("ERISA").  (Docket No. 1).  The Complaint sets forth a cause of action for improper denial of benefits.  *Id.*  The parties have filed cross Motions for Summary Judgment.  (Docket Nos. 16 and 17).  The parties have filed responses and briefs in opposition.  The Motions are now ripe for review.

## II.  LEGAL ANALYSIS

### A. Summary Judgment Standard of Review

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion.  *International Raw Materials, Ltd. v. Stauffer Chemical Co.,* 898 F.2d 946, 949 (3d Cir. 1990).  The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact.  *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir. 1987).  The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248

(1986).  A fact is material when it might affect the outcome of the suit under the governing law.  *Id.*  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.  *Celotex,* 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial.  *Id.* at 324.  Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988), *quoting Celotex*, 477 U.S. at 322.

## B. **ERISA Standard of Review**

In cases where a court is called upon to determine if an administrator of a benefits plan covered by ERISA has properly interpreted and applied the provisions of the plan, the first consideration is the degree of scrutiny the court should properly apply to those decisions.  ERISA itself does not contain a standard of review.  The Supreme Court has held, however, that "a denial of benefits challenged under §1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber*

*Co. v. Bruch*, 489 U.S. 101, 115 (1989).  If the administrator or fiduciary is granted discretionary authority to determine eligibility for benefits or to construe the terms of the plan, then the court applies an "arbitrary and capricious" standard of review. *Lasser v. Reliance Standard Life Ins. Co.*, 344 F.3d 381, 384 (3d Cir. 2003).  "Under the arbitrary and capricious standard, an administrator's decision will only be overturned if it is without reason, unsupported by substantial evidence or erroneous as a matter of law [and] the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." *Lasser*, 344 F.3d at 384, *quoting, Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 387 (3d Cir. 2000).

Plaintiff argues in its Brief in Support of its Motion for Summary Judgment that an arbitrary and capricious standard of review (either moderate or heightened) applies.  *See,* Docket No. 20, pp. 3-7, 19-20.[1]  Defendants argue that a simple arbitrary

---

[1]In its Brief in Opposition to Defendants' Motion for Summary Judgment, Plaintiff argues that a *de novo* review applies.  Docket No. 25, pp. 4-5.  After a review of their Brief in Opposition, I believe Plaintiff is arguing that Defendants did not apply the correct definition of disability, and therefore this Court should apply a *de novo* review.  *See,* Docket No. 25, p. 5 ("Because defendant has not evaluated plaintiff's case under the proper definition of disability...., the proper standard of review in this case is a *de novo*  review.").  Plaintiff relies on the case of *Burstein v. Retirement Account Plan for the Employees of Allegheny Health Education and Research Foundation*, 334 F.3d 365 (3d Cir. 2003) for this proposition.  *Burnstein,* however, does not support this proposition.  To begin with, *Burnstein* was a case that was at the motion to dismiss stage and not the summary judgment stage of litigation as we are in this case.  Further, *Burnstein* holds that where the language of a summary plan description ("Summary") differs from or conflicts with the plan language, it is the Summary language that will control.  *Burnstein,* 334 F.3d 378.  It says nothing about which standard of review to apply at summary judgment.  Thus, I find that Plaintiffs argument regarding which definition was applied to have no bearing on the issue of whether this Court should apply a *de novo* standard of review or an arbitrary and capricious standard of review.  Consequently, I reject Plaintiff's argument in her Brief in Opposition that a *de novo* standard of review should apply.

To the extent that Plaintiff is arguing that the Summary differs from the Plan and the Summary does not provide for discretionary authority, I reject this conclusion as well.  A review of the Summary reveals that the Summary does provide for discretionary authority.  Docket No. 17, Ex. 2, p. 16 (R. 824).

and capricious review applies.  See, Docket No. 22, pp. 7-11, and Docket No. 24, pp. 2-4.  Pursuant to the Plan, "[t]he Plan Administrator and its delegates shall have full discretionary authority in all matters related to the discharge of their responsibilities and the exercise of authority under the Plan, including, without limitation, the construction of the terms of the Plan, and the determination of eligibility for coverage and benefits....The rules, interpretations, and decisions of the Plan Administrator and its delegates shall be conclusive and binding upon all persons having or claiming to have any right or interest in or under the Plan...."  *See,* Docket No. 17, Ex. 1, The Plan, p. 7, Art. 2.1.  Defendant, Comcast, as Plan Administrator entered into an agreement with NATLSCO, Inc. (referred to as "Kemper") to handle the processing of all claims under the Plan.  Therein, Kemper agreed to administer the benefits under the Plan in accordance with ERISA.  Docket No. 17, Ex. 3, Service Agreement, p. 9 of 28, at ¶20.A.  Moreover, under the Service Agreement "[Comcast] delegates to Kemper discretionary authority to render eligibility determination following the initial claim submission and on appeal as well as interpreting the terms of the Plan."  *Id.* at p. 12 of 28, at ¶21.A.V.  In addition, the Service Agreement provides that Comcast "[s]hall not have responsibility for making any final appeal determinations. [Comcast] and Kemper each acknowledge and agree that [Comcast] does not have final discretionary authority at the final appeal stage to determine what benefits shall be paid under the Plan, to interpret Plan provisions, and to otherwise determine the merits of any final appeal."  *Id.* at p. 14 of 28, at ¶21.B.V.  Based on the same, I find the arbitrary and capricious standard of review applies.

However, such standard must be analyzed pursuant to a sliding scale.  *See, Pinto,* 214 F.3d at 389-92.  The level of scrutiny should be more penetrating when there is greater suspicion of partiality and less penetrating the smaller that suspicion.  *Lasser,* 344 F.3d at 385, *quoting, Pinto,* 214 F.3d at 392-93.  The following factors may be relevant in determining the severity of the conflict to formulate the appropriate level of scrutiny: (1) the sophistication of the parties; (2) the information accessible to the parties; (3) the exact financial arrangement between the insurer and the company; and (4) the stability of the employing company.  *Pinto,* 214 F.3d at 392; *Stratton,* 363 F.3d at 254.  This is a non-exclusive list.  *Kosiba v. Merck & Co.,* 384 F.3d 58, 64-65 (3d Cir. 2004).  Procedural irregularity, bias, or unfairness in the review of the claimant's application for benefits can also be factors.  *Kosiba,* 384 F.3d at 66.  Procedural anomalies that may indicate a higher arbitrary and capricious standard of review include: "failing to follow a plan's notification provisions and conducting self-serving paper reviews of medical files, *Lemaire v. Hartford Life & Acc. Ins. Co.*, No. 02-2533, 2003 WL 21500334, at *4 (3d Cir. June 30, 2003); relying on favorable parts while discarding unfavorable parts in a medical report, *Pinto*, 214 F.3d at 393-94; denying benefits based on inadequate information and lax investigatory procedures, *Friess v. Reliance Std. Life Ins. Co.*, 122 F.Supp.2d 566, 574-75 (E.D.Pa.2000); and ignoring the recommendations of an insurance company's own employees that benefits be reinstated, *Pinto*, 214 F.3d at 394." *Addis v. Limited Long-Term Disability Program,*  425 F.Supp.2d 610, 613 -14 (E.D. Pa. 2006)

In this case, Comcast funds the plan and hired an independent third party,

Broadspire (Kemper), to interpret the plan and make plan benefits determinations. Docket No. 17, Exs. 1 and 3.  As acknowledged by Plaintiff, this type of arrangement does not typically constitute the kind of conflict of interest that would warrant a higher arbitrary and capricious review.  Docket No. 20, p. 18; *see, Pinto,* 214 F.3d at 383.  However, Plaintiff argues that procedural anomalies suggest a moderately heightened arbitrary and capricious review.  Docket No. 20, pp. 18-20.

Specifically, Plaintiff argues that there are three procedural anomalies: 1) the insurer's reversal of its original determination without the examination of additional evidence; 2) a self-serving selectivity in the use of evidence; and 3) a bias in decision-making to the benefit of the insurer.  Docket No. 20, p. 18.  In addition, Plaintiff essentially argues that the failure to consider the social security determination of disability is also a procedural anomaly warranting a higher review.  Docket No. 20, pp. 19-20.  Contrary to Defendants' position (Docket No. 24, pp. 2-4), these could be construed as procedural irregularities to consider in determining the type of arbitrary and capricious review to apply.  *See*, *Addis,* 425 F.Supp.2d at 613 -14 (and cases cited therein).  In reviewing of the same, however, I find no merit to Plaintiff's first argument.  A review of the letters from Broadspire clearly indicates that they considered additional evidence.  *See,* Docket No. 27-1, pp. 16-17 (R. 348-49), pp. 31-32 (R. 402-03), and pp. 40-41 (R. 469-70).

As to Plaintiff's second and third arguments, however, I find that Broadspire was using self-serving selectivity.  For example, Broadspire was willing to accept the opinions of the non-examining peer review doctors, who accepted the diagnosis of

multiple sclerosis, but then rejected other portions of the treating physician's reports that supported Plaintiff's position that she cannot work in any capacity due to the progression of her multiple sclerosis and other maladies.   In addition, to support their position that Plaintiff's multiple sclerosis did not become worse, Defendants cite to the opinion of Dr. Wright wherein he states that "I cannot find any new neurological abnormalities." Docket No. 24, p. 4, *citing*, Docket No. 17 (R. 59). Reading the very next sentence, however, indicates otherwise:  "It just seemed as though all of her old ones were worse." (R. 59).   "[C]rediting one part of the advice of a treating doctor, but not his other advice...raises the likelihood of self-dealing." *Pinto*, 214 F.3d at 394.  Finally, I note that in making his employability assessment decision, the vocational expert reviewed only "the General Peer Review documents, dated 6/30/04, Vaughn Cohan, MD; and 6/29/04, Steven Schneider, MD." Docket No. 27 (R. 361).  He did not review any of Plaintiff's doctor's records.  This appearance of self-serving selectivity requires a heightened arbitrary and capricious review. Consequently, I find there are procedural abnormalities to warrant the heightened arbitrary and capricious sliding scale standard of review.

Plaintiff's final argument regarding her social security determination, likewise, causes me to pause.  (Docket No. 20, pp. 19-20).  Plaintiff argues that Broadspire failed to consider her social security determination of disability, despite its requirement that she apply for the same.  (Docket No. 20, pp. 19-20).  In opposition, Defendants argue that Broadspire cannot be faulted for paying little attention to the award because Plaintiff did not submit her application for benefits, the

evidence she submitted with her application for benefits, or the reasoned decision for the award.  (Docket No. 24, pp. 5-6).  I disagree with Defendants.

A review of the record reveals that the Plan requires all participants to apply for social security disability benefits and any award of the same will offset any LTDB.  (Docket No. 17, Ex. 1, pp. 22-23, R. 797-98).  Furthermore, the Plan requires that the participant supply a copy of the determination to the plan administrator and nothing more.   (Docket No. 17, Ex. 1, p. 23, R. 798).  Plaintiff submitted  her social security award to Broadspire.  Docket No. 27-1, p. 1 (R. 29).  While it is true that a social security award "does not in itself indicate that an administrator's decision was arbitrary and capricious and a plan administrator is not bound by the SSA decision," (*Marciniak v. Prudential Financial Ins. Co. of America,* No. 05-4456, 2006 WL 1697010, *2 (3d Cir. June 21, 2006),  the mere noting of the same and treating it as "essentially irrelevant" is cause for suggesting that unfairness occurred.  *Weinberger v. Reliance Standard Life Ins. Co.,*  No. 01-3627, 2002 WL 31746546, **2-3 (3d Cir.  Dec. 6, 2002) ("Persons familiar with Social Security disability litigation are certainly aware that the award of disability benefits at the administrative level is not easily won.  An impartial decision-maker in this case could not, in my view, simply dismiss the Social Security award as irrelevant because not binding upon the insurance company.  At the very least, one would expect a better explanation than that.").  The letter determining that Plaintiff is no longer eligible for LTDB does not reference Plaintiff's social security award.  (Docket No. 27-1, pp. 31-33, R. 402-404).  The appeal letter upholding the determination merely referenced the Social Security award in the list of

documentation that was included in its review. (Docket No. 27-1, pp. 40-42, R. 469-71). Thus, Broadspire essentially found the social security award to be irrelevant. Consequently, I find this anomaly supports increasing the degree of scrutiny.

Based on all of the above, I find a moderately heightened arbitrary and capricious review is warranted. Therefore, I must be deferential, but not absolutely deferential. *Pinto*, 214 F.3d at 393.

## C.  Review of Broadspire's Decision to Terminate Plaintiff's LTD

There is no dispute that Plaintiff has been diagnosed with relapsing remitting multiple sclerosis.[2]  Plaintiff was originally determined to be disabled under the Plan such that she was eligible for LTDB.  (R. 183).  The definition of who is eligible for long-term disability did not change in any way from the time that Plaintiff was awarded LTDB to the time when Defendants determined that Plaintiff was no longer eligible for LTDB and terminated her benefits.  Docket No. 22, p. 3.  The Summary of the Plan ("Summary") defines who is eligible for long-term disability.[3]

> If you're totally disabled and your disability is expected to
> continue beyond 26 weeks of STD benefits, you may apply
> for LTD benefits.  To receive LTD benefits, you must have
> a qualifying, non-work-related disability that renders you

---

[2]Multiple sclerosis is "a disease in which there are foci of demyelination of various sizes throughout the white matter of the central nervous system, sometimes extending into the gray matter.  Typically, the symptoms of lesions of the white matter are weakness, incoordination, paresthesias, speech disturbances, and visual complaints.  The course of the disease is usually prolonged, so that the term *multiple* also refers to remissions and relapses that occur over a period of many years."  *Doland's Illustrated Medical Dictionary,* p. 1611 (29th Edition 2000).

[3]The Plan defines long-term disability differently from the Summary.  *Compare,* R. 779 *with* R. 820.  The Third Circuit has held that "where a summary plan description conflicts with the plan language, it is the summary plan description that will control."  *Burstein v. Retirement Account Plan For Employees of Allegheny Health Educ. and Research Foundation*, 334 F.3d 365, 378 (3d Cir. 2003). Consequently, the Summary definition applies.

> unable to work and may ultimately result in your termination from the Company, based on the likelihood of your ability to return to work and the extent of total disability. You must exhaust the maximum benefit period for STD benefits before receiving LTD benefits.
>
> Long-Term Disability is defined as a non-work-related illness or injury, supported by Objective Clinical Findings, that prevents you from working at a job, with or without modifications, and that pays at least 60% of your pre-disability Eligible Base Pay, for which you are either qualified or may reasonably become qualified based on training, education or experience.

Docket No. 17, Ex. 2, p. 12 (R. 820). The Summary further defines Objective Clinical Findings as: "Observable and measurable findings of symptoms, such as x-ray reports, office visit notes, blood pressure readings, lab test results, etc."[4] *Id.* at p. 18 (R. 826).

Defendants first argue that the Plan's definition of disability requires objective medical evidence of the claimed disability. Docket No. 22, pp. 11-12. I disagree. As set forth above, the applicable definition does not require "objective medical evidence," but rather, requires "objective clinical findings" as defined by the Summary.

Defendants next argue that the administrative record contains no "objective

---

[4]The Plan defines the term "objective findings" rather than the term ""objective clinical findings" as used in the Summary presumably because the Plan's definition of long-term disability uses the term "objective clinical evidence." *Compare,* R. 780 *with* R. 826. The Third Circuit has held that "where a summary plan description conflicts with the plan language, it is the summary plan description that will control." *Burstein,* 334 F.3d at 378. While the list of documents that are acceptable as "objective findings" is not exhaustive, notably absent from the Plan definition of "objective findings" is office visit notes. Based on the same, I will apply the Summary definition of "objective clinical findings."

evidence" of limitations stemming from Plaintiff's condition that would prevent her from performing sedentary work.  Docket No. 22, pp. 12-15.  In support of this argument, Defendants first argue that the medical records contain virtually no observable and measurable evidence of impairments.  *Id.* at pp. 12-13.  Again, I disagree.  As set forth by the Summary definition of "objective clinical findings," observable and measurable findings of symptoms can include office visit notes.  Docket No. 17, Ex. 2, p. 18 (R. 826).  Plaintiff supplied various medical records from her various doctors that constitute "objective clinical findings" pursuant to the Summary definition.

For example, in addition to Plaintiff's MRIs of 8/20/99 and 4/30/00 (Docket No. 17, R. 666), and the MRI of 7/27/02 (Docket No. 27, R. 234), which indicate more pronounced multiple sclerosis than the prior studies and a progression of her disease (R. 237), and all of the prior doctors' reports, Defendant had the new medical records of Drs. Wright, Wilson, Stasko, Hadeed, Shymansky, and Rattan (R. 234, 237, 340-42, 500, 567, 569-70, 624-25, 626-27, 650-51, 664).  Therein, her doctors noted the observed symptoms suffered by Plaintiff.  For instance, on May 18, 2004, Dr. Wright observed that her limbs are weak, she has bladder dysfunction, an unsteady gait, incoordination, and cognitive dysfunctions, as well as suffering from fatigue due to multiple sclerosis as revealed  by Plaintiff's "very abnormal MRI of the brain and white matter demyalination." (R. 340).  Dr. Wright's opinion at that point was that Plaintiff had achieved maximum medical improvement, was 100% disabled, had severe limitation of functional capacity and was incapable of sedentary work.  (R.

13

340-41).  He then completed an evaluation of her physical abilities which indicated that she was not capable of sedentary work.  (R. 342).

All of her doctors observed some or all of the following conditions: relapsing remitting multiple sclerosis that is progressing, anemia, type 2 diabetes, progressive inability to ambulate (requiring a cane and at times a wheel chair), fatigue, weakness in lower right extremity, dragging of her right foot, decrease in strength, inability to do most activities of daily living without significant help, numbness, mumbled speech, weakness of her right hand with spasticity, decreased fine motor movements of her fingers, a positive Romberg to the right, significant fatigue and tiredness due to profound anemia with a hemoglobin in the range of 9, depression, stoic posture, inability to lift, carry, push or pull or stand for any length of time and can only sit for 2 hour intervals. (R. 234, 237, 340-42, 356-57, 500, 567, 624-25, 626-27, 650-51, 664).  These symptoms were not just based on self-reporting by Plaintiff, but on, *inter alia,* MRIs, blood tests, observations, etc.  Thus, contrary to Defendants' position,  Plaintiff's disability was supported by the "objective clinical findings" of her symptoms by her various doctors and the failure to credit the same was unreasonable.

Defendants next argue that Plaintiff's own description of her participation in the administrative process shows she can perform sedentary work.  Docket No. 22, p. 13.  In support of this conclusion, Defendants point to Plaintiff's typed response to a questionnaire and her testimony that she works out daily on an exercise machine and a stationary bike that she has  in her home.  *Id.*  After a review of the

same, I find it unreasonable to infer from the above that Plaintiff can perform sedentary work.  With respect to the typed report, there is absolutely no evidence to infer how long it took Plaintiff to complete her responses (by minutes, hours, days, or weeks) or even if she had help in typing the responses.   As Plaintiff indicated, she typed the responses because she is unable to hold a pen or pencil. (R. 260).   All that can be gleaned from the evidence of record is that the questionnaire was sent on March 9, 2004, and Plaintiff completed the questionnaire on April 6, 2004.  Docket No. 17 (R. 257, 260).

In addition, there is nothing in the evidence to infer how long Plaintiff exercises or that Plaintiff's exercise is anything but therapeutic, as she states that they are "doctor approved."  (R. 262).  Thus, I do not find that either of these factors indicate or tend to suggest that Plaintiff was capable of sedentary work. Consequently, I find reliance on the same to support a conclusion that Plaintiff can perform sedentary work to be unreasonable and arbitrary and capricious.

Defendants' last argument in their Brief in Support on this point is that Broadspire told Plaintiff what information to submit and she ignored that instruction.  Docket No. 22, pp. 13-14.  A review of the letters sent by Broadspire, however, indicate otherwise.   Docket No. 27 (R. 350, 404).  The letters appear to be generic in nature.  The initial letter states as follows:

> Additional documentation that may be helpful in review of your claim would be a current this could include, medical documentation, medical/progress notes, psychological examinations, neurological exam findings, abnormal current physical examination findings, including any and all restrictions and limitations, abnormal range of

15

motion.

(R. 350).  The denial letter then states:

> Provide us with current medical documentation which:
>
> • Establishes that you are disabled from **any** Gainful Occupation as previously defined;
>
> • Includes medical data, such as diagnostic test results, to support your diagnosis and claim for disability;
>
> • Provides specific functional abilities, including any and all restrictions and limitations.
>
> • Relevant documentation could include, but would not be limited to a Functional Capacity Evaluation

(R. 404)(emphasis in original).  Furthermore, contrary to Defendants' position, Plaintiff's doctor did not suggest Plaintiff undergo a functional capacity evaluation. Rather, Dr. Shymansky merely stated that if Plaintiff was in need of a functional capacity evaluation, he would write her a prescription for the same.  (R. 650).

The Plan empowers Broadspire to "[r]eport for medical or psychological examinations, from time to time, at the request of the Disability Case Manager or the Plan Administrator for the purpose of monitoring the Participant's condition or current health status." Docket No. 17 (R. 795). If Broadspire felt that a functional capacity evaluation was the one necessary test, it had the authority under the Plan to require such an exam. *Id.*  Broadspire never requested such an examination. As

a result, I find  Defendants' emphasis on Plaintiff's failure to have a functional capacity evaluation is misplaced.

Defendants conclude by arguing that "two components informed Broadspire's decision: 1) Plaintiff's capacity to perform sedentary work as evidenced by her participation in the process and her description of her daily activities, and 2) the only objective evidence of symptoms being difficulty walking and some diminished capacity in her right hand."  Docket No. 22, p. 14.  As set forth above, I find it was arbitrary and capricious to infer from her participation in the process and her daily exercise that Plaintiff can perform sedentary work.  Furthermore, as evidenced above, the  "objective clinical findings," as defined by the Summary, as set forth above, demonstrated Plaintiff's limitations as being more than just "difficulty walking and some diminished capacity in her right hand."  While it is true that there is no treating physician's rule under ERISA, an administrator "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black & Decker Disability Plan v. Nord,*  538 U.S. 822, 834 (2003). Thus, based on the rationale set forth above, the two reasons underlying Broadspire's decision to terminate Plaintiff's LTDB were unreasonable and arbitrary and capricious.

In their Reply Brief, Defendants further argue that: 1) at the time that Plaintiff was originally granted disability benefits, she was suffering from a urinary tract infection and dangerously high blood pressure, which had resolved when they reviewed her file; and 2) there is no "objective evidence" that her multiple sclerosis had worsened during the time she was originally granted benefits and the date they

17

were terminated.   Docket No. 24, p. 4.   To begin with, there is no evidence Defendants initially granted Plaintiff's LTDB on the basis of a urinary tract infection and her high blood pressure alone.  Thus, to suggest simply because Plaintiff did not have a urinary tract infection or high blood pressure at the time of review that somehow Plaintiff was now able to perform sedentary work is specious, especially given her diagnoses of relapsing remitting multiple sclerosis that is progressing, anemia, type 2 diabetes, etc.

Moreover, it is beyond my comprehension why Plaintiff would have to demonstrate that her multiple sclerosis "had worsened."  To support their position that Plaintiff's multiple sclerosis did not become worse, Defendants cite to the opinion of Dr. Wright wherein he states that "I cannot find any new neurological abnormalities." Docket No. 24, p. 4, *citing,* Docket No. 17 (R. 59).  Reading the very next sentence, however, indicates otherwise:  "It just seemed as though all of her old ones were worse." (R. 59).  Crediting one portion of a report and rejecting others is further evidence of arbitrary and capricious behavior.  *Pinto,* 214 F.3d at 393-94. An administrator cannot selectively parse out information*.  See, Petroff v. Verizon North, Inc. Long Term Disability Plan,* No. 02-318 WL 1047896, 14 (W.D. Pa. May 4, 2002) (stating that a selective review of medical evidence demonstrates an arbitrary and capricious denial).

Furthermore, there is absolutely nothing under the Plan or Summary to indicate that Plaintiff must show that her condition "had worsened."  *See,* Docket No. 17, Exs. 1 and 3.  Consequently, I find this argument to be unsupported and

without reason.

According to Defendants, Plaintiff met the definition of Long-Term Disability under the Plan on October 24, 2002 and received benefits.  (R. 183).   There is no indication or record of evidence that her multiple sclerosis improved, but rather, by all accounts, progressed.  Yet the definition did not change.  This is further evidence that Broadspire performed a biased review of Plaintiff's file.

Furthermore, Broadspire's decision was based, in part, on a vocational assessment.  Docket No. 27 (R. 403).  The vocational expert reviewed only the peer review documents in assessing Plaintiff's employability.  Docket No. 27 (R. 361). Such an assessment is one-sided  and biased.  Consequently, I find the assessment flawed and Broadspire's reliance on the same to be unreasonable and arbitrary and capricious.

Finally, I note that the letter from Broadspire determining that Plaintiff is no longer eligible for LTDB does not reference Plaintiff's social security award.  (Docket No. 27-1, pp. 31-33, R. 402-404).   The appeal letter upholding the determination merely referenced the Social Security award in the list of documentation that was included in its review.  (Docket No. 27-1, pp.  40-42, R. 469-71).  Thus, Broadspire essentially found the social security award to be irrelevant. *Weinberger v. Reliance Standard Life Ins. Co.,* No. 01-3627, 2002 WL 31746546, \*\*2-3 (3d Cir.  Dec. 6, 2002) ("Persons familiar with Social Security disability litigation are certainly aware that the award of disability benefits at the administrative level is not easily won.  An impartial decision-maker in this case could not, in my view, simply dismiss the Social Security

award as irrelevant because not binding upon the insurance company.  At the very least, one would expect a better explanation than that.").  Consequently, I find that failing to do anything more than list  Plaintiff's award of social security disability benefits as one of the items reviewed on appeal is additional evidence that the decision to terminate Plaintiff's disability benefits raises questions as to Broadspire's objectivity and further suggests that the decision to terminate her benefits was arbitrary and capricious.  (R. 470).

Having fully reviewed the record under a moderately heightened arbitrary and capricious review, I find that Broadspire's determination to terminate Plaintiff's LTDB was without reason and arbitrary and capricious.

Under ERISA, courts have discretion to fashion an appropriate remedy in any given case.  29 U.S.C. §1132(a)(3).  Since Plaintiff has already been determined to be entitled to benefits and I find the decision to terminate the same was arbitrary and capricious, reinstatement of benefits is the appropriate remedy.

* * * * * * * * * * * * * * * * * * * *

**ORDER OF COURT**

And now, this **15th** day of March, 2007, after careful consideration of the Cross-Motions for Summary Judgment and the supporting documentation, it is ordered that Plaintiff's Motion for Summary Judgment (Docket No.  16) is granted and Defendants' Motion for Summary Judgment (Docket No.  17) is denied.

It is further ordered that Plaintiff's long-term disability benefits be reinstated. As a result, Defendants are ordered to pay Plaintiff long-term disability benefits retroactively from November 1, 2004, with prejudgment interest at the applicable federal funds rate. Judgment is entered in favor of Plaintiff and against Defendant. This case is closed forthwith.


BY THE COURT:




/S/   Donetta W. Ambrose

 Donetta W. Ambrose,
 Chief U. S. District Judge